JAMES M. ROLENS *et al.*, *Appellants*, V. THE CITY OF
HUTCHINSON, *Appellee.*

No. 17,344.

### SYLLABUS BY THE COURT.

. 1. EASEMENTS—*Additional Servitude—Consent or Condemnation
—Cities—Drainage Ditch.* A city was granted an easement to
lay three or more twenty-four-inch pipes in a certain strip of
the grantor's land twenty-five feet wide, which extended from
a creek to a canal for the passage of water, and the city, sub-
sequently finding the pipes to be inadequate for the purpose,
undertook to dig and substitute an open ditch twenty-five feet
wide instead of the drainage pipes, without the consent of the
grantor and without condemning a right of way for the ditch.
*Held,* that the easement granted measured the rights of the
parties, and that it did not give the city the right to an open
ditch along the strip where the pipes were laid; and, further,
that the additional servitude can not be imposed against the
will of the grantor without a condemnation proceeding.

2. —— *Additional Servitude Beneficial to Grantor of Ease-
ment.* The fact that the open ditch might result in benefit to
the grantor's land does not warrant the city in making a sub-
stantial change in the easement or in enlarging the use
granted without the consent of the grantor.

3. —— *Additional Servitude—Injunction.* The attempt to
make and use the open waterway in place of the drainage
pipes, without obtaining the consent of the grantor or the
legal right to do so, may be restrained by injunction.

Appeal from Reno district court. Opinion filed De-
cember 10, 1910. Reversed.

*Carr W. Taylor,* and *George A. Neeley,* for the ap-
pellants.

*A. W. Tyler,* city attorney, for the appellee; *F. L.
Martin,* of counsel.

The opinion of the court was delivered by

JOHNSTON, C. J.: This is an appeal from a judg-
ment refusing to grant a temporary injunction against
the city of Hutchinson, in which suit the court was

Rolens v. Hutchinson.

asked to restrain the city from the construction of an open drainage ditch across the appellants' lands. The appellants are the grantees of A. J. Malick, who owned a small tract of land in the city of Hutchinson, across which Cow creek, a tortuous stream carrying considerable water, flows. On the west side of appellants' lands a drainage canal had been built by the city for the purpose of carrying off the flood waters of Cow creek. In 1908 the city undertook to straighten the course of Cow creek running through appellants' lands, and thus prevent an overflow upon the grounds, by damming up Cow creek at a point near its entrance upon appellants' lands and causing the water to flow through the drainage canal west of appellants' lands for some distance. By an agreement entered into by the city of Hutchinson and Malick he granted to the city the right to reconduct the waters from the drainage canal into Cow creek at a point several hundred feet below the dam, by laying drainage pipes in and across the lands of appellants to the bed of Cow creek. Under this agreement the city laid three twenty-four-inch pipes in and through the Malick land for a distance of 267 feet. The extent of the easement and the right of the city under it is the main controversy in this action.

The purpose of the city in damming the creek and turning the water into the canal, and then back into and through drainage pipes, was to eliminate several curves, or bends, in the creek on appellants' lands, thus straightening the stream and preventing overflows. The material part of the instrument creating the easement is the provision for "a right of way or easement for the purpose of laying three or more lines of twenty-four-inch pipe in and across the land of grantors from the drainage canal to Cow creek, said right of way and easement to be twenty-five feet wide, and located as follows," describing the location of the line, which was 267 feet long. The instrument conveying the easement

is formal and complete. The city claimed the right, and had begun, to dig up the three drainage pipes laid across the appellants' lands by virtue of the easement, because of their inadequacy for drainage purposes, and to substitute and maintain an open ditch twenty-five feet wide along the strip of land in which the city had been given the right to lay the pipes.

The city admits that in the digging of such open ditch the dirt will be piled temporarily on the lands of appellants, but insists that it has the right under the easement granted to maintain in the place of the pipes an open ditch, and thus prevent the appellants from the use of the surface of their lands over the drainage pipes. The injunction was refused, and appellants are here contending that they were entitled to an order enjoining the appellee from proceeding with the construction of an open ditch without their consent or without condemning the interest proposed to be taken in excess of that granted and the making of compensation therefor in the manner prescribed by law. The easement in controversy was created by an express grant, and it must be held to be the measure of the rights of the parties. The city was granted the right to lay three or more twenty-four-inch pipes in a certain twenty-five-foot strip, extending from the canal to the creek, a distance of 267 feet. Under this easement the city is entitled to lay as many twenty-four-inch pipes as can be placed in the strip, but the easement to lay pipes in the ground differs greatly from one to construct and maintain an open canal across the land. An open waterway dividing an owner's land and depriving him of all benefit of the use of the surface under which the pipes were laid would constitute an increase of the burden imposed and an enlargement of the use actually granted. In *Darlington v. Painter,* 7 Pa. St. 473, it was decided that "the grantee of a watercourse can not use it for any purpose that would increase the flow, enlarge the ditch, or affect the water

Rolens v. Hutchinson.

in any way different from that use for which the water-course was granted." (Syllabus.)  The city can claim no more under the grant than the right to lay and maintain pipes, and incidental to this it probably has the right to enter upon the land for the purpose of making necessary repairs, while the owner who granted the easement and in whom the title to the land remains is entitled to make any and every use of the land and to the profits derivable from such use, providing they are not inconsistent with the enjoyment of the easement. In *Burnham v. Nevins,* 144 Mass. 88, it was said:

"These general principles are that a man who owns land subject to an easement has the right to use his land in any way which is not inconsistent with the easement, but has no right to use it in a way which is inconsistent with the easement; and that the extent of the easement claimed must be determined by the true construction of the grant or reservation by which it is created, aided by any circumstances surrounding the estate and the parties which have a legitimate tendency to show the intention of the parties."  (p. 92.)

In behalf of the city it is argued that there is no recital in the deed specifically reserving to the grantor the right to use the surface of the land, but there was no necessity to reserve that which was not granted. The specific grant plainly implies that everything not granted is reserved to the owner of the fee.  In a Massachusetts case where something was claimed because of the lack of such a reservation it was said:

"The fact that there is no clause reserving to the grantor what is not granted is equally without significance.  A proper way of limiting an easement is to specify the purposes for which it is to be used.  If an easement is so limited, the land subjected thereto can not be used by the grantee of the easement for any other than the purpose named.  As well might it be argued that when a life estate is carved out of a fee it is not enough that all that is granted is a life estate, in order that the reversion should be preserved to the original owner.  For the same reason it is of no

importance that the words 'for no other purpose what-soever,' found in the grant of 1856, are omitted from the grant in question. It is enough if an easement is limited to a specific purpose." (*Gray v. Cambridge,* 189 Mass. 405, 415.)

The contention is that the pipe-drainage plan is in-adequate, and that public interest and safety require an open waterway. If the present plan endangers the health and safety of the city it devolves on the authori-ties to devise and carry out a more effective one, and the law points out a method by which the city may obtain an open waterway; but the necessity, however pressing, does not warrant the taking of private prop-erty for that purpose without compensation. If an additional easement is required, and private property is necessary, cities of the class in which Hutchinson belongs may acquire it by a condemnation proceeding; but such property can not be appropriated until ade-quate compensation is provided for or made. (Laws 1872, ch. 100, § 65, Gen. Stat. 1909, § 1410.)

It is contended that the straightening of the stream and the making of a new waterway was beneficial to the landowner, but this may have been one of the con-siderations that entered into the original grant of the easement. If a condemnation proceeding is had for an open waterway which is of benefit to the landowner, that benefit may be considered in determining the com-pensation to be awarded him; but the mere fact that an appropriation of private property may result in benefit or that a change of an easement granted might improve the landowner's property is no reason why the city may change the easement or enlarge the use against his will. The city can not take more than was granted, without consent or compensation, whether it is pro-ductive of either benefit or injury. It has been said that "no one has a right to compel another to have his property improved in a particular manner; it is as illegal to force him to receive a benefit as to submit to

an injury." (*Merritt v. Parker,* 1 N. J. Law, 460, 466.)
In *Jaqui v. Johnson,* 27 N. J. Eq. 526, it was held that a
proposed change in an easement for conducting water
which it was said would cause no more injury than the
easement actually granted could be enjoined.    The
court said:

"It seems to me to be quite clear, also, that the right
is wanting in the appellant, against the objection of
the appellee, to bed the water pipes beneath the sur-
face of the ground, where, before, they were above, or
to make any substantial change in the relation of the
pipe to the surface of the appellee's lands from the
manner of its use and position at the time of convey-
ance.    It is no proper answer to his objection, in such
case, to say that it will injure him no more or less than
the others, or benefit him.    One may not invade the
property of another, and justify or excuse the legal
wrong because attended with no actual injury to such
property, and especially so when the question of
whether injurious or not rests only on the opinion of
the trespasser."    (p. 532.)

In *Dickenson v. The Grand Junction Canal Company,*
15 Beav. (Eng. Ch., R. C., 1852) 260, on an application
for an injunction for the violation of an agreement as
to the use of a waterway, it was held to be no answer
to say that the alterations would not be injurious or
even to prove that they were beneficial to the com-
plainants.    Likewise it has been held that an owner of
a flume across another's land has no right, on its decay,
to erect a larger one, even if it should turn out to·be
more advantageous to the owner of the land.    (*Dewey v.
Bellows,* 9 N. H. 282.)    So, also, it was held in *Johnston
v. Hyde,* 32 N. J. Eq. 446, that the grantee of an ease-
ment for an open raceway over the lands of another
could not, without his consent, be compelled to accept
the substitution of a covered aqueduct or any other con-
duit in lieu of the original open one.    (See, also, *Allen
v. San Jose Land & W. Co.,* 92 Cal. 138; *Hulme et al.
v. Shreve,* 4 N. J. Eq. 116.)

Reference is made by appellee to the obligations of

the parties to the lower riparian owners on the creek. Whatever these obligations may be, and whether the riparian owners can require the opening of the old creek bed from which the water was diverted and compel its flow through the natural channel, are questions not involved in this controversy. The litigation is confined to the rights of the city and the appellants under the granted easement. It is not proposed to turn the water back into the dry channel of Cow creek, but the city is undertaking to make a substantial change in the easement and to impose burdens upon appellants' lands, without their consent, that are not warranted by the deed granting it a right to a waterway through their lands.

There is no doubt that appellants are entitled to the remedy invoked. Injunction is a proper remedy to prevent a party from trespassing upon and using a way over the land of another without his consent, where such trespass or use if continued would ripen into an easement. (*Kirkendall v. Hunt*, 4 Kan. 514; *City of Kansas v. K. P. Rly. Co.*, 18 Kan. 331; *Poirier v. Fetter*, 20 Kan. 47; *Hanselman v. Born*, 71 Kan. 573; *Council Grove Township v. Bowman*, 76 Kan. 563; *Winslow v. City of Vallejo*, 148 Cal. 723; 1 High, Inj., 4th ed., § 622.)

Under the pleadings appellants were entitled to an injunction, and therefore the judgment is reversed and the cause remanded, with directions to grant the injunction applied for.